IN THE TENTH JUDICIAL CIRCUIT COURT
IN AND FOR POLK COUNTY, STATE OF FLORIDA

REBECCA BELLE HARTMAN,
f/k/a REBECCA BELLE RIETZE,

    Plaintiff,

v.

NAVY FEDERAL CREDIT UNION,
a federal credit union,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Rebecca Belle Hartman, f/k/a Rebecca Belle Rietze ("Hartman" or "Plaintiff"), by and through the undersigned law firm, sues Defendant, Navy Federal Credit Union, a federal credit union ("NFCU" or "Defendant"), and alleges, as follows:

## JURISDICTION AND PARTIES

1. Plaintiff brings this action pursuant to Fla. Stat. § 559.55 *et seq.*, the Florida Consumer Collection Practices Act ("FCCPA") and 47 U.S.C. § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA").

2. This is an action for damages exceeding $15,000.00.

3. Pursuant to Fla. Stat. § 26.012, and other applicable law, this Court has jurisdiction over each cause of action set forth herein.

4. Plaintiff is a natural person and was at all relevant times, a resident of Polk County Florida. Plaintiff is a "debtor" and "consumer," as that term is defined by Fla. Stat. § 559.55(8). Plaintiff is also a "person" as provided by 47 U.S.C. § 227(b)(1).

Page 1 of 8

5. Defendant engaged in collection efforts, including but not limited to, calling Plaintiff when she resided in Polk County, Florida. Defendant made calls into Polk County, Florida.

6. Defendant, is a creditor as defined by Fla. Stat. § 559.55(5), was and is doing business in the State of Florida, and is a "person" under Fla. Stat. § 559.72. Defendant and is a "person" as provided by 47 U.S.C. § 227(b)(1). The FCCPA and the TCPA apply to Defendant.

7. Defendant itself or through its employees and/or agents engaged in the collection of a debt allegedly belonging to Plaintiff. The debt was a consumer debt in that it was used for personal, family, and/or household purposes.

8. Defendant engaged in collection efforts directed toward Plaintiff, which included but was not limited to making phone calls.

9. At least some of the phone calls Defendant made to Plaintiff were robo calls Defendant made to Plaintiff's wireless phone using an automated dialer.

10. At all times mentioned herein, Defendant acted through employees, representatives, and/or agent who were acting within the course and scope of such agency or employment and were acting with the consent, permission, authorization and direction of Defendant. Each such employee, actor, and entity acted as a co-actor in an enterprise unlawfully attempt to collect an alleged debt from Plaintiff.

## FACTS

11. On or about March of 2008, January of 2009, and June of 2012, Plaintiff opened a line of credit with Defendant. The accounts were 3721, 3620 and 3805 respectively. The accounts were closed on or about October of 2016, January 2017, and January 2017 respectively.

12. Plaintiff fell behind on payments, and Defendant via its employees, representatives, and/or agents engaged in collection efforts to attempt to collect the debt.

13. In so doing, Defendant called the Plaintiff at least two (2) times a day, seven (7) days per week. Defendant made all calls to the Plaintiff's cell phone number which ended in 7800. The calls began in August of 2015 and continued into March of 2017.

14. The Defendant continued to call the Plaintiff even after the Plaintiff told representatives for the Defendant that she could not pay and to stop calling. Plaintiff spoke to representatives of Defendant at least once a month every month and sometimes twice a month. The first time she told Defendant to stop calling was in April of 2014. On that particular call, she told Defendant to stop calling her at work, and the calls to work did eventually stop. The next time Plaintiff told Defendant to stop calling was in December 2015, and at that time, she told the NFCU representative she had no money, she could not pay, stop calling, and leave her alone.

15. However, Defendant didn't stop, and they continued to call her as many as 2 times a day as many as 7 days a week with there being on average 4-7 calls a week every week.

16. The next time Plaintiff told Defendant to stop calling her was in January 2016. At that time, she told a representative of Defendant the same thing she told them before: she had no money, she could not pay, stop calling, and leave her alone. And afterwards, Plaintiff did the same thing at least once a month every month into March of 2017.

17. Additionally, Defendant would often call Plaintiff in the morning, and she would tell them she could not pay and why, and then she asked to be left alone, and then they would call back the same day. When Plaintiff objected, Defendant told her that they would call until she paid.

18. Plaintiff recalls at least one Defendant representative saying in response to her objection to the calls, "we aren't doing anything until we get the money." Another one said, "if you don't pay we can sue you and take your wages."

<u>COUNT I</u>
<u>VIOLATION OF THE FLORIDA CONSUMER COLLECTIONS PRACTICES ACT
("FCCPA"), FLA. STAT. § 559.55 *et seq.*</u>

19. This is an action against Defendant for violation of Fla. Stat. § 559.55 *et seq.*

20. Plaintiff re-alleges and incorporate paragraphs 1 through 18, as if fully set forth herein.

21. Defendant is engaged in the business of soliciting consumer debts for collection and collecting consumer debts and is, therefore, subject to Fla. Stat. §559.55 *et seq.*

22. The alleged debt is a "consumer debt" as defined by Fla. Stat. § 559.55(1) insofar as it is allegedly for primarily personal, family, or household purposes.

23. Defendant communicated certain information to Plaintiff and others as set forth above, which constitutes "communication," as defined by Fla. Stat. § 559.55(5).

**Fla. Stat. § 559.72(4)**

24. Fla. Stat. § 559.72(4) provides, in pertinent part:

In collecting consumer debts, no person shall:

Communicate or threaten to communicate with a debtor's employer before obtaining final judgment against the debtor, unless the debtor gives her or his permission in writing to contact her or his employer or acknowledges in writing the existence of the debt after the debt has been placed for collection. However, this does not prohibit a person from telling the debtor that her or his employer will be contacted if a final judgment is obtained.

25. Defendant violated Fla. Stat. § 559.72(4) when Defendant called Plaintiff's employer before obtaining a final judgment against Plaintiff, and without being given express written permission.

**Fla. Stat. § 559.72(7)**

26. Fla. Stat. § 559.72(7) provides, in pertinent part:

In collecting consumer debts, no person shall:

Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully

Page 4 of 8

engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

27. Defendant violated Fla. Stat. § 559.72(7) when Defendant engaged in the above mentioned conduct-excessive calling, calling on the same day after making contact, making back to back calls, making calls after notice of inability to pay, making calls after cease calls directives, making calls to work, stating we will call you until you pay regardless of what you say, threats to take her wages, and making dialer calls to her wireless phone after oral revocation; individually and collectively which constitutes: (a) willfully communication with the debtor with such frequency as can reasonably be expected to harass the debtor, and/or (b) willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor.

### Fla. Stat. § 559.72(9)

28. Fla. Stat. § 559.72(9) provides, in pertinent part:

In collecting consumer debts, no person shall:

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist

29. Defendant violated Fla. Stat. § 559.72(9) when Defendant said "we aren't doing anything until we get the money" and "if you don't pay we can sue you and take your wages." Defendant knows it must "do something" (i.e. stop calling upon: notice of inability to pay, notice to stop, notice of representation, notice of bankruptcy, and/or after all attempts to negotiate have failed) - even if Plaintiff never pays the money. And even if Defendant were to sue Plaintiff it may not "take her wages." First it would have to get a judgment; then it would have to bring a garnishment action; then it would have to overcome Plaintiff's exemptions.

30. All conditions precedent to this action have occurred, have been satisfied or have been waived.

31. As a result of the above violations of the FCCPA, Plaintiff has been damaged including, but not limited to, mental anguish, despair, frustration, embarrassment, nervousness, anger, and loss of capacity to enjoy life and Defendant is liable to Plaintiff for her actual damages, statutory damages, and reasonable attorney's fees and costs pursuant to the FCCPA, Fla. Stat. § 559.77(2).

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Defendant, finding that Defendant violated the FCCPA, awarding Plaintiff actual damages, statutory damages, punitive damages, attorneys' fees and costs pursuant to Fla. Stat. § 559.77(2), and awarding Plaintiff any and all such further relief as is deemed necessary and appropriate.

<u>**COUNT II**</u>

**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,<br>47 U.S.C. § 227 *et seq.* AS TO DEFENDANT BRH**

32. This is an action against Defendant for violations of 47 U.S.C. § 227 *et seq.*

33. Plaintiff re-alleges and reincorporates paragraphs 1 through 18, as if fully set forth herein.

34. Defendant, in the conduct of its business, uses an automatic telephone dialing system as defined by 47 U.S.C. § 227(a)(1)(A) to communicate with Debtor.

35. Section 47 U.S.C. § 227(b)(1)(A)(iii) provides in pertinent part:

It shall be unlawful for any person within the United States --

(A) to make any call . . . using any automatic telephone system or an artificial or prerecorded voice --

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

36. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) when Defendant (1) made multiple Collection Calls on multiple days, in multiple weeks, over multiple months, including without

limitation from at least August 2005 into March 2017 to Plaintiff on Plaintiff's wireless phone attempting to collect the Debt; and did so after revocation of any consent, which occurred on or about December 2015 and again in January 2016 and again at least once a month thereafter into March 2017; which is Defendant's use of an automatic telephone dialing system to make multiple Collection Calls to Debtor on Debtor's personal cell phone without consent.

37. Defendant willfully, knowingly, and intentionally made multiple Collection Calls to Debtor's personal cell phone utilizing an automatic telephone dialing system.

38. All conditions precedent to this action have occurred, have been satisfied or have been waived.

39. As a result of the above violation of the TCPA, Defendant is liable to Plaintiff for actual damages, or the amount of $500.00 as damages for each violation, whichever is greater, pursuant to the TCPA, 47 U.S.C. § 227(b)(3)(B).

40. Based upon the willful, knowing, and intentional conduct of the Defendant as described herein, Plaintiff is also entitled to an increase in the amount of the award to treble the damages amount available under 47 U.S.C. § 227(b)(3)(B), in accordance with 47 U.S.C. § 227(b)(3).

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against the Defendant: (1) finding Defendant violated the TCPA; (2) awarding Plaintiff actual damages or the amount of $500.00 in damages for each violation, whichever is greater; (3) finding Defendant willfully, knowingly and intentionally violated 47 U.S.C. § 227 *et seq.* and increasing the damages award to treble the amount of damages otherwise to be entered as a judgment; and (4) awarding Plaintiff any and all such further relief as is deemed necessary and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby respectfully demands a trial by jury.

## VERIFICATION

*See* **Exh. 1**, Plaintiff's Affidavit, attached hereto.

Dated:  March 11, 2019

Respectfully Submitted,

**LASH WILCOX & GRACE PL**
4950 W. Kennedy Blvd., Ste. 320
Tampa, Florida 33609
Phone: (813) 289-3200
Facsimile: (813) 289-3250

**KENNETH C. GRACE, ESQ.**
Florida Bar No. 0658464
e-mail: kgrace@lashandwilcox.com
Attorneys for Plaintiff

Page 8 of 8

## AFFIDAVIT OF REBECCA BELLE HARTMAN

Pursuant to the provisions of Florida Statutes § 92.50, under penalty of perjury, I, Rebecca Belle Hartman, f/k/a Rebecca Belle Rietze declare that I have read the foregoing document and that the facts stated in it are true and correct to the best of my recollection.

1. My name is Rebecca Belle Hartman, f/k/a Rebecca Belle Rietze; and I am over the age of 18, and competent to make this declaration. The facts set forth are based upon my personal knowledge and my review and understanding of account at issue and the collection thereof.

2. In 2008, 2009, and 2012, I took out three separate lines of credit with Navy Federal Credit Union ("NFCU"); accounts ending in 3721, 3620 and 3805 respectively. I used the loans for personal expenses; household expenses. Afterwards I had serious financial hardship and was unable to pay the loans. It was at that time NFCU started calling me. NFCU called me to attempt to collect the loans. I knew that it was NFCU calling me about the loans because they said so. Also, they left messages for me, and I began to recognize the number on my caller ID.

3. I recall getting calls from NFCU on my cell phone; my phone number was ███-███-7800. NFCU called me at least two (2) times a day as many as seven (7) days per week. On average, I got about 4-7 calls a week from NFCU. The calls began in 2014, but they got really bad about August of 2015 and continued until about March of 2017. In addition, NFCU called my employer.

4. Some of the calls appeared to be initiated by a person but some of the calls appeared to be initiated by a machine. I know this because some of the calls resulted in a personal message crated by an actual person, but some of the messages were prerecorded and

Page 1 of 3

automated. Because of the high volume of calls made and the prerecorded automated messages, at least some of the calls NFCU made were made by an auto robo dialer.

5. NFCU continued to call me even after I told them I could not pay and to stop calling. I recall speaking to employees of NFCU at least once a month every month and sometimes twice a month.

6. The first time I told NFCU to stop calling me was in April of 2014. On that particular call, I told NFCU to stop calling me at work, and I think that they made no more calls to me at work.

7. The next time I told NFCU to stop calling me was in December 2015, and at that time, I told the NFCU representative I had no money, I could not pay, stop calling, and leave me alone. It was at this time, that I changed my mind about NFCU calling me on my cell phone- when I told them to stop calling me. They didn't stop, and they continued to call me as many as 2 times a day as many as 7 days a week with there being on average 4-7 calls a week every week.

8. The next time I told NFCU to stop calling me was in January 2016. At that time, I told a representative of NFCU the same thing I told them before: I had no money, I could not pay, stop calling, and leave me alone. And afterwards, I did the same thing at least once a month every month until about March of 2017.

9. Additionally, NFCU would often call me in the morning, and I would tell them I could not pay and why, and then I asked to be left alone, and then they would call back the same day. When I objected, they told me that they would call until I paid. I recall one NFCU representative saying in response to my objection to the calls, "we aren't doing anything until we get the money." Another one said, "if you don't pay we can sue you and take your wages."

10. The calls and my request for the calls to stop went on and on until about March of 2017.

11. I found the constant calls to be quite harassing, oppressive, and abusive-especially the number of calls that NFCU made to my cell phone after my notices of inability to pay and my cease calls directives.

12. Eventually the calls stopped and did so a little before the time I filed for bankruptcy. I filed for bankruptcy on June 29, 2017.

Executed on this 23 day of February 2019 by: _____
Rebecca Belle Hartman

STATE OF FLORIDA
COUNTY OF POLK

The foregoing instrument was sworn to and subscribed before me this 23 day of February 2019, by, Rebecca Belle Hartman, f/k/a Rebecca Belle Rietze who is personally known to me or has produced FLDC (type of identification) as identification.

_____
Notary Public – State of Florida
My Commission Expires: 8/15/2021

Michelle Kaczorowski
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG134807
Expires 8/15/2021

Page 3 of 3

**2019CA-001015-0000-00         Received in Polk 03/12/2019 03:55 PM**